660 So.2d 664 (1995)
STATE of Florida, Petitioner,
v.
David Allen WHITE, Respondent.
No. 83289.
Supreme Court of Florida.
July 13, 1995.
Rehearing Denied September 18, 1995.
*665 Robert A. Butterworth, Atty. Gen., Joan Fowler, Sr. Asst. Atty. Gen. and James J. Carney, Asst. Atty. Gen., West Palm Beach, for petitioner.
Stephen D. Fromang, Vero Beach, for respondent.
SHAW, Justice.
We have for review State v. White, 636 So.2d 753 (Fla. 4th DCA 1994), based on direct conflict with Mayberry v. State, 561 So.2d 1201 (Fla. 2d DCA 1990). We have jurisdiction. Art. V, § 3(b)(3). The decision of the court below is approved.
The State and David Allen White stipulated to the following facts:
(1) The defendant, David Allen White, was operating a motor vehicle on November 20, 1992, upon the streets of Indian River County which had a defective tail light.
(2) Upon noticing the defendant's tail light, Deputy Sheriff William Moore effected a lawful traffic stop.
(3) Upon running the defendant, David Allen White's driver's license it was discovered that there was a civil contempt arrest warrant outstanding, for the defendant's failure to pay child support.
(4) Deputy Sheriff William Moore confirmed the existence of said warrant.
(5) Thereupon, Deputy Sheriff William Moore with the assistance of Deputy Sheriff Mike Walsh, conducted a search incident to arrest, thereupon discovering the contraband.
(6) Upon transferring the defendant to the Indian River County Sheriff's Office, Deputy Sheriff William Moore retrieved the actual hard copy of the warrant and discovered that the warrant had been served 4 days prior to the defendant's arrest.
The trial court found that a void warrant cannot support a legal arrest and incidental search and granted White's motion to suppress the contraband. The district court affirmed pursuant to State v. Schafer, 583 So.2d 374 (Fla. 4th DCA 1991), review dismissed, 598 So.2d 78 (Fla. 1992); State v. Gifford, 558 So.2d 444 (Fla. 4th DCA 1990); and Albo v. State, 477 So.2d 1071 (Fla. 3d DCA 1985). White, 636 So.2d at 753.
We approve the decision of the court below, but in so doing we address important facts which, though absent from the stipulation, are nonetheless critical to this case's resolution. During the hearing on the motion to suppress it became clear that the arrest was premised upon the assumption *666 that there was an outstanding warrant against White. The assumption resulted from a computer in the Sheriff's Office incorrectly showing the warrant against White as active. In sum, the computer reflected an outstanding active warrant when, in point of fact, the warrant had been served four days previously and was no longer valid when White was arrested.
The "computer age" has had a profound impact upon the lives of most if not all of us. Law enforcement agencies are no exception. The computer's ability to assemble information is undoubtedly of great benefit to police agencies that are burdened with arduous recordkeeping tasks. The accuracy of the information generated by the computer, however, is only as precise as data supplied. If the computer is given inaccurate data, the computer-generated results will likewise be inaccurate. As is well known in computer jargon, "junk in equals junk out." The United States Supreme Court recently addressed this issue when it granted certiorari to "determine whether the exclusionary rule requires suppression of evidence seized incident to an arrest resulting from an inaccurate computer record, regardless of whether police personnel or court personnel were responsible for the record's continued presence in the police computer." Arizona v. Evans, ___ U.S. ___, ___, 115 S.Ct. 1185, 1189, 131 L.Ed.2d 34 (1995). The Court held that the rule does not require evidence suppression where the erroneous computer information results from clerical errors committed by court employees. The issue of whether the exclusionary rule bars the use of evidence obtained as the result of an illegal arrest resulting from police error was left unanswered. Evans does not speak to this precise issue.
The Fourth Amendment to the United States Constitution states that:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV. The purpose of the Fourth Amendment is to prohibit unreasonable governmental incursion into one's person, home, papers, or effects. United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).[1] The exclusionary rule inhibits governmental breach of the principles embodied in the Fourth Amendment by prohibiting governmental use of evidence seized in violation of the rule. As written in Calandra, "the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures: `The rule is calculated to prevent, not to repair... .'" 414 U.S. at 347, 94 S.Ct. at 620. The rule is not all encompassing, and its use has been historically limited to the deterrence of police misconduct. See Evans, ___ U.S. at ___, 115 S.Ct. at 1191; Calandra, 414 U.S. at 348, 94 S.Ct. at 620. Even within the realm of deterring police misconduct, the rule is not ironclad, as is demonstrated by its "good faith" exception enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Leon court modified the exclusionary rule to allow prosecutorial "case-in-chief" use of evidence obtained by officers reasonably relying on a search warrant issued by a detached and neutral magistrate, even though the warrant was subsequently found to be unsupported by probable cause. 468 U.S. at 913, 104 S.Ct. at 3415. Although the issue in Leon concerned judicial error, the opinion provided insight into the purpose and goals of the exclusionary rule relative to police error. We find the following passage particularly insightful:

*667 The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official conduct was pursued in complete good faith, however, the deterrence rationale loses much of its force.
Leon, 468 U.S. at 919, 104 S.Ct. at 3418 (quoting Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974)).
A police officer has knowledge, or may be properly charged with knowledge, of an unconstitutional search under what is commonly called the "fellow officer" or "collective knowledge" rule. The rule generally works to the officer's advantage by providing that when making an arrest, an officer may rely upon information supplied by fellow officers. However, if the information fails to support a legal arrest, evidence seized as a result of the arrest cannot be insulated from challenge on the grounds that the instigating officer relied on information furnished by fellow officers. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); People v. Ramirez, 34 Cal.3d 541, 194 Cal. Rptr. 454, 668 P.2d 761 (1983); People v. Jennings, 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1981). The rule does not function "solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information." Ramirez, 194 Cal. Rptr. at 458, 668 P.2d at 765. The Evans court, in recognizing the ongoing validity of this rule, stated that "Whiteley clearly retains relevance in determining whether police officers have violated the Fourth Amendment." ___ U.S. at ___, 115 S.Ct. at 1192.
Turning to the instant case, we find that the error under review boils down to one unmistakable fact  failure of the police to maintain up-to-date and accurate computer records resulted in an illegal arrest and search. This type of police negligence fits squarely within the class of governmental action that the exclusionary rule was designed to deter, i.e., police negligence or misconduct that is likely to be thwarted if the evidence seized is suppressed. Suppression of evidence seized pursuant to police computer error will encourage law enforcement agencies to diligently maintain accurate and current computer records.[2] We find that the following automation error concerns expressed by State v. Evans are germane to our opinion:
It is repugnant to the principles of a free society that a person should ever be taken into police custody because of a computer error precipitated by government carelessness. As automation increasingly invades modern life, the potential for Orwellian mischief grows. Under such circumstances, *668 the exclusionary rule is a "cost" we cannot afford to be without.
177 Ariz. 201, 204, 866 P.2d 869, 872 (1994), rev'd, ___ U.S. ___, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). The good faith exception is inapplicable in this instance since it was within the collective knowledge of the sheriff's office that the warrant was void. In essence, the arresting officers are charged with knowledge that they had no authority to arrest the defendant. Evidence obtained as a result of the illegal arrest is subject to the exclusionary rule.
We approve the decision of the court below and disapprove Mayberry v. State, 561 So.2d 1201 (Fla. 2d DCA 1990), to the extent it conflicts herewith.
It is so ordered.
KOGAN, HARDING and WELLS, JJ., concur.
GRIMES, C.J., concurs in result only.
OVERTON, J., dissents with an opinion.
ANSTEAD, J., recused.
OVERTON, Justice, dissenting.
I dissent. I conclude that the "good faith" exception to the exclusionary rule, as expressed in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies under the facts of this case. There is no dispute in this record that the officers on the scene in this case acted in good faith. I am unable to conclude that the four-day lag time to update the status of warrants was so unreasonable that it requires application of the exclusionary rule. The whole purpose of the exclusionary rule is to deter police misconduct. The official conduct at the scene was in complete good faith and, consequently, the exclusionary rule's underlying rationale, to deter police officer misconduct, has no basis under these circumstances. I conclude that the contraband found on the respondent should not have been suppressed.
NOTES
[1] As required by the Florida Constitution, search and seizure rights

shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
Art. I, § 12, Fla. Const.
[2] The State asserts that the police should not be held culpable since four days is not an unreasonable delay in updating police computer records. We agree that the State should not be penalized for any reasonable lag time in updating police records. However, we note that it is impossible to tell from the record whether this is a case of improper computer entry or a matter of updating an accurate computer record. The trial court and the parties treat it as the former and we resolve it on that basis. We are particularly persuaded by the following dialogue from the motion to suppress hearing:

THE COURT: Is this the facts in your motion to suppress?
MR. FROMANG [Defense attorney]: Yes.
MR. HARRISON [Prosecutor]: Your Honor, the only change that I would ask in the stipulation is the officers verified the existence of a gun through communications.
MR. FROMANG: Yes  right.
MR. HARRISON: And went ahead and proceeded. When they received the warrant, the actual warrant, they found out that it had been served prior thereto and was no longer valid.
THE COURT: The facts you are agreeing to, I'm just reading here, it says an outstanding warrant was logged into the computer at the Sheriff's Office was active when it was not... . The other information is that they checked with their office, the office confirmed that there was an outstanding warrant for his arrest.
MR. HARRISON: Yes sir.