661 So.2d 389 (1995)
Ronald Dale BUNSE, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2715.
District Court of Appeal of Florida, Fifth District.
October 13, 1995.
*390 Jack R. Maro, Ocala, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Steven J. Guardiano, Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, Judge.
The issues on appeal concern whether the trial court erred in denying a motion to suppress evidence found on the defendant's person during a search incident to arrest and statements made during the arrest.
Appellant, Ronald Bunse, was driving a 1993 Chevrolet truck owned by a friend of his, Dustin Beattie. Officer Johnny Johnston stopped Bunse because he could not see any tag on the rear of the vehicle as required by Florida law. Bunse explained that the Missouri tag was on the front of the vehicle in accordance with Missouri law. Officer Johnston checked the tag by calling the communications division to verify the tag number through the FCIC/NCIC computer. He was advised that there was no record for that tag, meaning that tag was unassigned. Johnston then checked the Vehicle Identification Number (VIN) and discovered that a different tag had been assigned to the vehicle than the tag number displayed.
Officer Johnston arrested Bunse for having an improper tag attached to a motor vehicle. He searched Bunse incident to arrest and discovered two twenty-dollar bills and a cigarette wrapper containing seven to nine rocks of crack cocaine. Officer Johnston later testified that, immediately following the arrest, Bunse spontaneously begged him to make a deal, explaining that a car salesman had given him the crack cocaine as payment of a $50 debt, that he had a drug problem before, and that he did not realize why he had taken the cocaine. Johnston never Mirandized Bunse.
The State filed a three-count information charging Bunse with possession of cocaine, possession of drug paraphernalia, and having an improper tag (attaching a registration license plate not lawfully assigned to his vehicle). Bunse filed a motion to suppress the cocaine and drug paraphernalia found during the search incident to the arrest and the incriminating statements he made on the grounds that the underlying arrest was illegal because the vehicle had a proper out-of-state tag and he was never read his Miranda warning.
At the hearing on the motion, Officer Johnston was asked to identify two documents, an approval certificate and a registration renewal application, both of which indicated that Bunse's vehicle was properly registered in the state of Missouri. Officer Johnston testified that he had copies of both documents but could not remember how or when he had acquired them. He had previously testified that when he asked the defendant for his license and registration, Bunse produced only a Florida license and had no registration. Johnston stated that he could have obtained these documents from the glove compartment of the truck during the search incident to arrest, but he was not sure. On his failure to Mirandize Bunse, Officer Johnston testified that he never Mirandizes a suspect unless he intends to ask him questions.
The owner of the vehicle, Beattie, testified that he had loaned the vehicle to Bunse and that both documents were in the glove compartment at that time. Bunse testified that he gave Johnston the documents before he was arrested and that the officer reviewed them in his presence and yet still returned to his vehicle and had communications check the tag and license in the computer. He then arrested Bunse for improper tag because the computer indicated that the tag number had not been assigned to any vehicle at that point and because the VIN for the Chevy truck had been assigned a different tag number.
Both of the documents in question indicate that the vehicle was inspected and properly *391 registered in the state of Missouri, that all fees were paid and all requirements satisfied, and that the tag in question had, in fact, been assigned to the vehicle bearing the VIN of the Chevrolet truck owned by Beattie. The approval certificate indicates that the car was inspected, the necessary repairs were made, and the vehicle was reinspected after the repairs on January 14, 1994, just fifteen days prior to Bunse's arrest. The other side of the approval certificate indicates that license 511-244 was issued for the vehicle on January 15, 1994 and appears to be signed by an agent of the license bureau. The renewal application appears to contain all necessary information, is validated in the appropriate area with a stamp indicating "PAID JAN 15 1994," is completed and initialed in the "Office Use Only" section, and indicates on the back that "This document becomes a vehicle registration certificate only after validation by the Missouri Department of Revenue."
At the hearing on the motion to suppress, Bunse argued that, while the initial stop was valid for improper display of a tag, this itself was not a criminal offense and that the paperwork showed that the tag was properly registered to the vehicle. Therefore, Bunse maintained that the arrest was unlawful and that the search incident thereto was improper. He also contended that any statements made to Johnston at the time of the arrest were inadmissible because he was never given his Miranda warnings.
The motion to suppress was denied, after which Bunse pled no contest to the charges but reserved the right to appeal the court's order denying his motion. He was sentenced to three years' drug offender probation. Bunse appeals; we affirm.
Bunse contends that once Officer Johnston determined that the vehicle carried a properly displayed out-of-state tag yet continued to investigate, the stop became pretextual and therefore any contraband found as a result of the search and any statements Bunse made should be suppressed. The State responds that Officer Johnston had probable cause to arrest Bunse based on the information he received from his computer check of Bunse's tag and VIN which indicated that the displayed tag was unassigned and that the vehicle had been assigned a different tag. The State urges that, because there is no indication that the officer here was acting unreasonably in relying on the computer record, application of the exclusionary rule would not have altered his behavior.
In Arizona v. Evans, ___ U.S. ___, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the Supreme Court recently faced a factual scenario similar to that presented in the instant case. The defendant was arrested during a routine traffic stop when a patrol car's computer indicated that there was an outstanding misdemeanor warrant for his arrest. In the search incident to his arrest, the police found a bag of marijuana in the defendant's car and he was charged with possession.
The United States Supreme Court in Evans applied the same analysis that it had applied in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which involves the examination of three factors:
1. Will application of the exclusionary rule deter police misconduct?
2. Is there any evidence that the individuals who were responsible for the inaccurate record are "inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires the application of the extreme sanction of the exclusion"?
3. Is there any basis for believing that exclusion of the evidence in question would have a significant deterrent effect on those individuals responsible for the faulty recordkeeping?
Evans, ___ U.S. at ___, 115 S.Ct. at 1191. After considering these factors, the Evans court determined:
If court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction. First, as we noted in Leon, the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. Second, respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment *392 or that lawlessness among these actors requires application of the extreme sanction of exclusion.... Finally, and most important, there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed.
Evans, ___ U.S. at ___, 115 S.Ct. at 1193.
Although the Florida Supreme Court in State v. White, 660 So.2d 664 (Fla. 1995), recently held that the "collective knowledge" rule holds police officers accountable for computer errors if the computer is under the control of law enforcement, such rule was held not to be applicable if the computer records are compiled by non-law enforcement agencies.[1]
The rule of Evans and the exception to White control here. The record shows that the tag on Bunse's vehicle was valid as of the date the appropriate fees were paid, January 15, but that the computer had not been updated by the date of the arrest, January 29. Thus, the error which prompted the arrest was caused by employees of the Missouri Motor Vehicle Bureau who neglected to update the computer records simultaneously with the issuance of the tag. The first factor of the Leon/Evans framework requires an inquiry into whether the purpose of the exclusionary rule will be served by suppressing the evidence. As the Evans court noted, that purpose is to deter police misconduct, not the misconduct of other individuals who are responsible for creating records upon which the police reasonably rely. Because there was no police misconduct in this case, the purpose of the exclusionary rule would not be served by suppressing the evidence.
The next inquiry in the Leon/Evans test is whether the individuals who were responsible for the inaccurate recordkeeping are inclined to ignore or subvert the Fourth Amendment, such that the sanction of exclusion is required to control this behavior. The record contains no evidence that Motor Vehicle Bureau clerks have either the opportunity or the inclination to ignore or subvert Fourth Amendment rights, and the exclusion of evidence in the instant case would do nothing to speed up the process of updating computer records at the Motor Vehicle Bureau.
Finally, the last inquiry in the Leon/Evans test is whether the exclusion of the evidence would have a significant deterrent effect on the individuals responsible for the faulty recordkeeping. Again, in the instant case the answer is no. It is unlikely that the exclusion of evidence in this case will have any effect whatsoever on the recordkeeping processes at the Motor Vehicle Bureau in Missouri.
Based on the foregoing, it is quite clear that the trial court was correct in denying the motion to suppress. The purpose of the exclusionary rule would not be served as there was no police misconduct, and exclusion of the evidence in question would have no effect on the individuals responsible for the recordkeeping error in this case.
Bunse argues that the approval certificate and the renewal application, both of which he maintains he provided to Officer Johnston prior to his arrest, were sufficient to "evaluate the tag situation on the motor vehicle." He maintains that Johnston erred in choosing to ignore this information and arrest Bunse based on incorrect computer records. This argument fails for two reasons. First, the evidence presented does not clearly establish when Officer Johnston obtained these documents. Although Bunse testified that he gave them to the officer upon exiting his vehicle immediately after he was stopped, Johnston claims he was only *393 given Bunse's driver's license and that he had no registration. Johnston thinks he may have obtained the documents during the search incident to arrest, in which case his reliance on the computer records prior to the arrest was completely justified. The judge properly may have believed Johnston.
Bunse's argument also fails because it does not really matter when Johnston obtained the approval certificate and renewal application. Even if he had these documents in hand when he received the computer information, the "new" registration certificate only became effective once validated by the Missouri Department of Revenue. The computer check would be justified for the purpose of determining that the validation had taken place. Officer Johnston's reliance on the computer information was reasonable, and the fact that the information may have been incorrect does not render the arrest and search incident thereto invalid. See Mayberry v. State, 561 So.2d 1201, 1202 (Fla. 2d DCA 1990) (officer's mistaken belief that defendant was person named in arrest warrant was reasonable under the circumstances and did not render arrest and search incident thereto invalid).
Bunse also argues that the spontaneous statements he made when the cocaine was discovered should be suppressed because he was not given Miranda warnings. Miranda warnings are only necessary where there is a custodial interrogation. Roberts v. U.S., 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); State v. Foster, 562 So.2d 808 (Fla. 5th DCA 1990). In the instant case, there was no such interrogation. Rather, Bunse spontaneously made the incriminating statements in an attempt to make a deal with the officer.
AFFIRMED.
PETERSON, C.J., and GOSHORN, J., concur.
NOTES
[1] Although State v. White was released after the briefs were filed in this case, we requested and received supplemental briefing on this issue.