851 So.2d 293 (2003)
Anthony FRIERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-1875.
District Court of Appeal of Florida, Fourth District.
August 6, 2003.
*294 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
We grant appellant's motion for rehearing in part, withdraw our previous opinion and substitute the following:
This case presents two significant Fourth Amendment issues: (1) Whether during a traffic stop the police may rely on an arrest warrant that arose from an earlier incident where an imposter identified himself as the driver whom the police have detained? and (2) Where there is no reasonable cause to justify a traffic stop, may an outstanding arrest warrant constitute an intervening circumstance that dissipates the taint of the illegal action, so that evidence uncovered during a search incident to arrest is admissible in evidence?
We hold that although the officer might justifiably rely on the erroneously issued warrant to make an arrest, the firearm uncovered during the search incident to the arrest was nonetheless the fruit of the illegal stop, so that it must be suppressed.
After his motion to suppress was denied, Anthony Frierson pled no contest to possession of a firearm by a convicted felon and reserved his right to appeal. The order denying the motion to suppress is "a prior dispositive order" of the circuit court within the meaning of Florida Rule of Appellate Procedure 9.140(b)(2)(A)(i), so this court has jurisdiction.
Frierson sought to suppress the seizure of the firearm, contending that the stop which preceded the arrest was unlawful and that the warrant which provided the basis for his arrest was wrongfully issued.
The trial judge made the following findings of fact:
[O]n July 8, 2001, the defendant was driving an automobile at the intersection of Old Dixie Highway and Northlake Boulevard in Lake Park, Florida. The vehicle in which the defendant was riding was stopped at a traffic light facing north on Old Dixie Highway. Officer Steven Miller was stopped behind the defendant's vehicle. Upon the traffic light turning green, the defendant made a left hand turn onto Northlake Boulevard. Officer Miller testified that the defendant did not use a left turn signal prior to or during the left hand turn. Officer Miller also testified that neither he nor the drivers of other vehicles were affected by the defendant's failure to use a turn signal while making that turn. The officer's testimony also indicated that he observed a white light emanating from a crack in the plastic lens covering the tail light of the left rear of the defendant's vehicle. Officer Miller acknowledged that the plastic lens was cracked, but that the light was operating.
Because the defendant failed to use a turn signal in making his left hand turn and because white light was emanating from a crack in the plastic lens covering the taillight, Officer Miller effected a traffic stop of the defendant's vehicle. Upon being stopped by Officer Miller, the defendant provided the officer with identification. Officer Miller ran a check on the defendant, and learned that there was an outstanding warrant for the defendant's arrest for failure to appear in another proceeding. As a result of the outstanding warrant, the defendant was arrested. A search incident to *295 the defendant's arrest revealed the firearm which formed the basis of the charge against him in this case. A subsequent investigation determined that the warrant which provided the basis for the defendant's arrest was issued due to another person's failure to appear. Someone other than the defendant was issued a notice to appear in the other case and wrongfully gave the issuing officer the defendant's name and date of birth. A fingerprint was taken of the individual to whom the notice to appear was issued. It is undisputed the print taken did not match that of the defendant's.
For reasons which we will explore more fully below, the trial court denied the motion to suppress, holding that even though the initial traffic stop was without reasonable cause, the existence of the arrest warrant constituted an intervening circumstance which dissipated the taint of the gun being obtained as the result of an illegal traffic stop.

The traffic stop was without legal basis
In this case, the officer stopped Frierson for the failure to signal when turning and driving with a cracked taillight.
Under section 316.155(1), Florida Statutes (2000), a person may not turn a vehicle "from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal ... in the event any other vehicle may be affected by the movement." A law enforcement officer may arrest a person without a warrant when a "violation of chapter 316 has been committed in the presence of the officer." § 901.15(5), Fla. Stat. (2000).
Section 316.610, Florida Statutes (2000) prohibits the driving of a vehicle that "is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter." Section 316.221(1), Florida Statutes (2000) requires a motor vehicle to be equipped with "at least two taillamps mounted on the rear, which, when lighted... shall emit a red light plainly visible from a distance of 1,000 feet to the rear...."
Upon "reasonable cause to believe that a vehicle is ... not equipped as required by law, or that its equipment is not in proper adjustment or repair," a police officer may "require the driver of the vehicle to stop and submit the vehicle to an inspection...." § 316.610(1).
We agree with the circuit court that the stop of Frierson was without reasonable cause. We adopt Judge Marra's reasoning:
Because, the undisputed testimony indicated that no drivers were affected by the defendant's failure to use a turn signal, and the left tail light of the defendant's vehicle was, in fact operating, the defendant contends that Officer Miller had no legal basis to effect the traffic stop. Established precedent from the Florida Supreme Court supports the defendant's contention.
In State v. Riley, 638 So.2d 507 (Fla. 1994), the court was presented with facts nearly identical to those presented in the present case. The defendant in Riley was a passenger in a vehicle that was stopped for failure to use a turn signal when making a right-hand turn. As a result of the stop, the defendant was arrested for possession of marijuana. The defendant challenged the validity of the stop, contending that since no one was affected by the turn, the arresting officer had no basis to conduct a traffic stop. In holding that the stop was improper, the supreme court held that:

*296 Section 316.155(1) directs that a person may not turn a vehicle from a direct course upon a highway unless and until the turn can be made with reasonable safety. The statute further provides that the turn may only be completed "after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by the movement." § 316.155(1), Fla. Stat. (1991) (emphasis added). Thus, the plain language of the statute only requires a signal if another vehicle would be affected by the turn.... If no other vehicle is affected by a turn from the highway, then a signal is not required by the statute. If a signal is not required, then a traffic stop predicated on failure to use a turn signal is illegal and any evidence obtained as a result of that stop must be suppressed.... The two officers that stopped the vehicle testified that no other vehicle was affected by the driver's right-hand turn onto the highway. Under these circumstances, the driver did not violate section 316.155 and should not have been stopped by the officers. Thus, the evidence obtained as a result of the improper stop was properly suppressed.

Id. at 508. A subsequent case interpreting Riley has recognized that the mere failure to use a turn signal, without the driver's conduct creating a reasonable safety concern, does not constitute a violation of the statute. See Crooks v. State, 710 So.2d 1041, 1043 (Fla. 2d DCA 1998).
In view of the fact that the undisputed testimony in this case was that the defendant's failure to use a turn signal did not affect any other vehicles, and since there was no evidence suggesting that the defendant's turn created a concern for safety, Officer Miller could not validly stop the defendant based upon his failure to use his turn signal.
With respect to the cracked taillight lens, the Florida Supreme Court decision of Doctor v. State, 596 So.2d 442 (Fla.1992) is controlling. In Doctor, the arresting officers stopped the defendant's vehicle citing a broken taillight. The officers testified that they had stopped the defendant's vehicle "after observing a white light emitting from a crack in the tail assembly." Id. at 444. The officers agreed that the equipment defect "was a crack in the innermost lens of the left taillight assembly." Id. at 446.
In holding that the stop in Doctor was illegal, the court stated:
It was the reflector that was cracked, rather than one of the lights. Trooper Burroughs confirmed that the vehicle had taillights shining on each side of the rear of the vehicle, despite the cracked lens cover, at the time of the stop. Thus, as Trooper Burroughs conceded, the vehicle had "at least two taillamps" in working order when it was pulled and was not in violation of the law.... [A] reasonable officer would have known that Doctor's vehicle was in compliance with the law since red taillights were visible on both ends of the vehicle.

Id. at 446-47.
The facts in Doctor are also nearly identical to the facts in the present case. Officer Miller did not testify that the red lens cover was missing from the vehicle. Rather, he testified that it was cracked, and as a result, he observed white light emanating through the crack. In Doctor, the Supreme Court held that such a defect was not violative of the law and was not a valid basis to conduct a traffic stop.

*297 Officer Miller justifiably relied on the outstanding, but invalid warrant in arresting Frierson

Frierson strenuously argues that the warrant in this case was insufficient to support the arrest and search.
The warrant arose from a uniform traffic citation issued on April 11, 2001. Officer Keith Gorski of the West Palm Beach Police Department made a traffic stop. The person stopped did not have a driver's license. The person gave Frierson's name, address, and birth date as his own.
Officer Gorski ran the name through his dispatcher for a computer check to see if the person stopped had a warrant or if his license was valid. The name, address, and date of birth matched the information on Frierson's driver's license. The computer check indicated that Frierson's driver's license was suspended.
Officer Gorski issued the driver a uniform traffic citation[1] and notice to appear charging him with driving while his license was suspended or revoked. Also, he affixed the driver's thumbprint on the original of the citation that was filed with the court clerk. The citation set an initial court appearance for April 26, 2001.
The person who received the citation failed to appear on April 26 and an arrest warrant issued for Frierson. After Frierson's arrest in this case, the state attorney's office had Frierson's thumbprint compared to the one on the original citation and they did not match.[2] The state nolle prossed the driving under suspension charge against Frierson on September 25, 2001.
A notice to appear issued by an officer at the scene is a proper method of charging a person with a crime. See Fla. R.Crim. P. 3.140(a)(2). If a person arrested for a misdemeanor does not demand to be taken before a magistrate, an arresting officer may issue a notice to appear unless:
(1) the accused fails or refuses to sufficiently identify himself or herself or supply the required information;
(2) the accused refuses to sign the notice to appear;
(3) the officer has reason to believe that the continued liberty of the accused constitutes an unreasonable risk of bodily injury to the accused or others;
(4) the accused has no ties with the jurisdiction reasonably sufficient to assure the accused's appearance or there is substantial risk that the accused will refuse to respond to the notice;
(5) the officer has any suspicion that the accused may be wanted in any jurisdiction; or
(6) it appears that the accused previously has failed to respond to a notice or a summons or has violated the conditions of any pretrial release program.
Fla. R.Crim. P. 3.125(b).
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court held that suppression of evidence was not required when the police obtained it through objective good faith reliance on a facially valid warrant that is later found to lack probable cause. The court reasoned that a "good faith" exception to the exclusionary *298 rule was proper under such circumstances because suppression would not promote the exclusionary rule's purpose of deterring official misconduct. Id. at 918-19, 104 S.Ct. 3405.
In Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the Supreme Court considered the good faith exception in the context of an arrest based upon an erroneous police record indicating the existence of an outstanding arrest warrant. In Evans, during a traffic stop, a police officer discovered an outstanding arrest warrant through a computer check of the defendant's name. The officer arrested the defendant, searched the vehicle incident to the arrest, and discovered a bag of marijuana. Id. at 4, 115 S.Ct. 1185. The defendant moved to suppress the marijuana as the fruit of an unlawful search, arguing that the warrant had previously been quashed, but due to a clerical error, had not been removed from the records of the sheriff's office. Id.
The Supreme Court refused to exclude the evidence. The court found that there was no indication that the officer did not act in an objectively reasonable manner when he relied upon the police computer record. The court wrote that the policy objective of the exclusionary rule, deterrence of police misconduct, would not be served by suppressing the evidence. Id. at 10-14, 115 S.Ct. 1185; see United States v. Santa, 180 F.3d 20, 25-30 (2d Cir.1999) (finding that good faith exception applied where arresting officers reasonably relied upon a warrant that another jurisdiction had erroneously failed to remove from database).
The trial judge's order discusses the application of Evans by the Florida Supreme Court:
In State v. White, 660 So.2d 664 (1995), the Florida Supreme Court applied the holding of Evans to exclude evidence discovered incident to an erroneous arrest resulting from a computer error in a sheriff's office. In White, the court concluded that the failure of the police to maintain up-to-date and accurate computer records was the type of police negligence that fit within the class of governmental action that the exclusionary rule was designed to deter. Thus, the Court concluded that this type of negligence or misconduct was of the type likely to be "thwarted" if the evidence was suppressed. The Court stated that "[s]uppression of evidence seized pursuant to police computer error will encourage law enforcement agencies to diligently maintain accurate and current computer records." Id. at 667.
The Florida Supreme Court came to a similar conclusion in Shadler v. State, 761 So.2d 279 (Fla.2000). There, the court held that evidence obtained as a result of a warrant issued from erroneous records of the Department of Highway and Safety should also be suppressed. The underlying rationale for the decision in Shadler was the court's conclusion that the Department of Highway and Safety was a "law enforcement agency" and that its employees are adjuncts of the law enforcement team. Id. at 285. Thus, the Court concluded that the exclusionary rule was "perhaps the only means by which the judiciary can help to ensure the accuracy of records and information compiled by the Department of Highway Safety and its divisions that routinely provide records to Florida's police and sheriffs' departments." Id. at 285.
We agree with Judge Marra that White and Shadler do not preclude the state from relying on the Leon and Evans good faith exception in this case:
When one applies the factors considered by the [United States Supreme] *299 Court in Leon and Evans, it is clear that the good faith exception should apply in the present case. As previously noted, the exclusionary rule was designed to deter police misconduct. Any misconduct which occurred in the present case stemmed from the actions of a private citizen, not the actions of individuals or entities associated with the state. Excluding the evidence in the present case will not have any deterrent effect on private citizens who falsely identify themselves to police. Nor could the threat of exclusion of the evidence under these facts be expected to deter private individuals from continuing to provide false information upon encounters with the police. Lastly, if the erroneous actions of court employees, who are the agents of the state, do not warrant the application of the exclusionary rule, the wrongful actions or private citizens cannot justify its application.
The defendant asserts that by applying the exclusionary rule in this case, it will deter police agencies from negligence in incorrectly identifying individuals who are arrested. The defendant contends that police agencies should be required to verify the identity of all individuals who are arrested or to whom notices to appear are issued by checking fingerprints obtained from the arrested individuals against the police agencies' fingerprint databanks. The defendant avers that the failure to do so is "negligence or misconduct" which must be "thwarted" by suppression of evidence.
Th[e] Court concludes that to require such action by police agencies for all persons who are arrested would place an undue and unreasonable burden on them. Th[e] Court does not believe that the exclusionary rule was intended to impose such extreme burdens upon law enforcement authorities, nor does th[e] Court believe that law enforcement's failure to institute such a burdensome procedure constitutes "the type of police negligence ... the exclusionary rule was designed to deter."
We note that an officer has the discretion to issue a notice to appear for a criminal traffic offense such as driving under a license suspension. Here, the counterfeit Anthony Frierson provided Officer Gorski with a name, address, and date of birth that matched the driver's license record on the computer. This provided the officer with an adequate basis for believing that the driver had "sufficiently identif[ied] himself" to allow the issuance of a notice to appear instead of a custodial arrest. Fla. R.Crim. P. 3.125(b)(1).
Since the enactment of section 322.15(2), Florida Statutes (2001), the taking of a fingerprint of a person who does not produce a driver's license during a traffic stop is a requirement of statute. As Judge Gross explains in his concurring opinion, the purpose behind the statute is to benefit those whose identity has been wrongfully coopted, not to burden a law enforcement agency with further records searches to possibly verify the identity of the provider of the fingerprint.

Because the traffic stop was without reasonable cause, the firearm is subject to suppression as the fruit of the poisonous tree, notwithstanding the outstanding warrant
We depart from the trial court in one crucial respect. Existing precedent from this court requires suppression of the firearm.
Kimbrough v. State, 539 So.2d 619 (Fla. 4th DCA 1989), involved an officer who stopped a car without founded suspicion. A "police computer check of [the defendant's] identity revealed an outstanding arrest warrant in [the defendant's] name." Id. The defendant was arrested and two *300 cocaine rocks were discovered during "the ensuing search of his person." Id. This court held that because "there was no founded suspicion to justify the officer's stop in the first place," "the physical evidence obtained during the subsequent search" of the defendant "would properly be suppressed." Id.
The second district followed Kimbrough in writing that where an officer stops a moving vehicle without "cause to believe a traffic infraction has occurred," "[t]he fact that the officer subsequently discover[s] an outstanding warrant does not validate an illegal detention." Rollins v. State, 578 So.2d 850, 851 (Fla. 2d DCA 1991).
More recently, in Solino v. State, 763 So.2d 1249 (Fla. 4th DCA 2000), we ruled that a stop of a moving vehicle based on an anonymous tip was without reasonable suspicion for the officer to make an investigatory stop. After the stop, the officer's computer check revealed an outstanding arrest warrant[3] for Solino for burglary and a violation of probation. The officer told Solino that he was under arrest. Solino ran from the scene and disappeared into a housing development. Because the investigatory stop was "unlawful," we held that the information obtained by the officer "that led to the arrest was `fruit of the poisonous tree' and should have been suppressed" under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Id. at 1252.
Kimbrough, Solino, and Rollins compel the conclusion that the trial judge should have granted the motion to suppress the firearm because the initial traffic stop was not supported by reasonable cause.
The trial court relied upon Wigfall v. State, 323 So.2d 587 (Fla. 3d DCA 1975) and State v. Foust, 262 So.2d 686 (Fla. 3d DCA 1972).
In Foust, the police arrested the defendant pursuant to two bench warrants which were revealed to the officer by a radio check. 262 So.2d at 687. A search of the defendant incident to the arrest uncovered marijuana. Id. The trial court suppressed the evidence. Id. The third district reversed, holding that the search of the defendant incident to the arrest was reasonable. Id. at 688. The court wrote that "the reasonableness of the search after arrest was not affected by the fact that the original stopping of [the defendant] may have been without probable cause." Id.
The basis for the holding in Foust is that the warrant was an intervening circumstance which rendered the subsequent search sufficiently attenuated from the illegality of the initial stop. See Wong Sun, 371 U.S. at 488, 491, 83 S.Ct. 407. The essence of Kimbrough, Solino, and Rollins is that an arrest warrant "does not validate an illegal detention." Rollins, 578 So.2d at 851. We certify conflict with Foust.
We reverse the conviction and sentence.
KLEIN and SHAHOOD, JJ., concur.
GROSS, J., concurring specially with opinion.
GROSS, J. concurring specially.
I concur in the majority opinion because the result is required under Kimbrough and Solino. However, were we writing on a clean slate, I would affirm the ruling of the trial court that "the existence of a valid outstanding warrant discovered in the *301 course of an illegal traffic stop" sufficiently attenuated the connection between the illegal stop and the search incident to the arrest so as to render the firearm found during the search admissible in evidence.
A court may admit evidence that would not have been uncovered but for police misconduct if the causal connection between the illegal conduct and the discovery of the evidence is sufficiently attenuated. Wong Sun, 371 U.S. at 491, 83 S.Ct. 407. In Wong Sun, the Supreme Court indicated that the proper inquiry is whether the evidence was obtained through exploitation of the initial constitutional violation or by other means sufficiently attenuated from the primary illegality so as to purge the evidence of its taint. Id. at 488, 491, 83 S.Ct. 407; see, e.g., United States v. Fazio, 914 F.2d 950, 957 (7th Cir.1990) (indicating that evidence may be sufficiently distinguishable to be purged of the primary taint if "the causal connection between [the] illegal police conduct and the procurement of [the] evidence is `so attenuated as to dissipate the taint' of the illegal action").
In Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the Supreme Court set forth three factors for determining whether the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.
Similar factually to this case, United States v. Green, 111 F.3d 515 (7th Cir. 1997), applies the principles of Wong Sun and Brown. As Judge Marra wrote below, in Green
the defendant was driving in a vehicle that was stopped without probable cause. During the course of the traffic stop, the officers discovered that an outstanding warrant existed for a passenger in the vehicle. The passenger was arrested and the vehicle was searched incident to the arrest. Contraband was discovered in the vehicle. As a result, the defendant was arrested. In Green, as in the present case, the defendant asserted that but for the illegal traffic stop, the police would never have discovered the outstanding warrant for his passenger. But for that discovery, his passenger would not have been arrested and a search of the vehicle would not have been conducted. Thus Green asserted that discovery of the contraband was "fruit of the poisonous tree" and should be suppressed. [111 F.3d at 517-18].
In Green, the Seventh Circuit recognized that the United States Supreme Court did not establish a "but for" test that would render inadmissible any evidence that comes to light after an illegal stop. Id. at 520. The court concluded that because it was not "outweighed by flagrant official misconduct," the arrest warrant was an intervening circumstance dissipated "any taint caused by the illegal stop of the Greens." Id. at 521. The court wrote:
It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant-in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of Avery constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.
Id. In evaluating the "official misconduct," the seventh circuit concluded that there *302 was no evidence of "bad faith on the part of the police." Id. at 523.
Other courts have followed Green. See People v. Murray, 312 Ill.App.3d 685, 245 Ill.Dec. 430, 728 N.E.2d 512, 516-17 (2000); State v. Jones, 270 Kan. 526, 17 P.3d 359, 360-61 (2001); State v. Hill, 725 So.2d 1282, 1285-86 (La.1998); see also Ruffin v. State, 201 Ga.App. 792, 412 S.E.2d 850 (1991).
There is no indication of bad faith on the part of Officer Miller in this case. A finding of no reasonable suspicion to make a traffic stop requires a close reading of the traffic statutes and applicable case law. It is not unusual to find police officers who are unable, on the street, to parse the nuances of statutes with the precision of trained jurists. The officer did not "exploit the stop in order to search the automobile." Green, 111 F.3d at 523. The search came only after the officer learned of the outstanding warrant. But for Kimbrough, Solino, and Rollins, I would follow Green and its progeny and find that the intervening circumstances in this case dissipated any taint of the evidence that arose from the illegal stop of the vehicle.
The recent case of State v. Diaz, 850 So.2d 735, 2003 WL 21087992 (Fla. May 15, 2003) is close, but not directly on point. There, following an illegal detention of a driver, a license check revealed that the driver's license was suspended. The driver was charged with felony driving with a suspended license. The supreme court affirmed the third district's dismissal of the case without discussing the attenuation issue.
For an attenuation analysis, the crucial distinction between Diaz and this case is that here the police acted on an outstanding arrest warrant. A warrant indicates the existence of criminal conduct separate from the conduct that occurred at the time of the illegal traffic stop. Justified by conduct so removed from the illegal traffic stop, the arrest supports a search incident to the arrest.
I also write to discuss the history of the program in Palm Beach County where, during a traffic stop, officers affix thumbprints on citations of persons without licenses. I served on the county court when the program was initiated.
During the 1980s the Palm Beach County Jail was under a federal court order to address the problem of overcrowding. At the same time, the county government was concerned about reducing costs of operating the jail. Applicable statutes and court rules provided that persons charged with crimes were entitled to pretrial release on reasonable conditions. Officers were encouraged to write notices to appear for traffic crimes to reduce the costs attendant to a custodial arrest.
In the late 1980s, the Palm Beach County county court judges noticed a recurring pattern in some cases where persons without driver's licenses had been issued notices to appear. Typically, the defendant charged in such a case contended that he or she had not received the citation. A lawyer was often appointed, or the defendant hired a lawyer, and the defendant was required to make multiple court appearances to resolve the case. A case often turned on the ticketing officer's ability to recognize the individual to whom the citation was given.
In cases where the imposter was identified, he or she usually turned out to be someone with a close relationship to the person whose name was given to the ticketing officer, such as a sibling, cousin, or close friend. These persons knew enough personal information, such as birthday and address, to survive the computer check.
Working in conjunction with the state attorney's office, the Palm Beach County *303 county court judges created a program where, on the original citation filed with the court, an arresting officer would affix the thumbprint of a person who could not produce a valid driver's license or other identification. With the citation so readily available, a person whose defense was that he or she was not the person who received the citation could provide a thumbprint to the state attorney's office in open court. The prosecutor's office arranged to have the thumbprint compared to the print on the original citation. If there was no match, then the prosecutor would nolle prosse the charge and have the discretion to file criminal charges against the imposter.
The program proved to be successful. The cost of providing traffic officers with portable thumbprint kits was minimal. The program drastically reduced the court appearances of persons wrongfully charged. It provided hard evidence to make a criminal case against the imposter under section 901.36(1), Florida Statutes (2000). An unanticipated effect was that officers reported that many would-be imposters confessed their true identity when confronted on the street with the thumbprint requirement. The success of the program in Palm Beach County and other jurisdictions led to the passage of section 322.15, Florida Statutes (2001). See Ch. 90-102, § 2, at 271-72, Laws of Fla.
I agree with the majority opinion and Judge Marra that the exclusionary rule was not intended to shackle law enforcement agencies with burdensome procedures. The defendant's approach would transform an efficient, cost-effective program into an onerous administrative obligation for a law enforcement agency to ascertain the identity of ticketed persons who cannot produce a driver's license. A search would be required even in cases where a defendant provided their correct name. The practical effect of a ruling for Frierson would be that more police officers would err on the side of finding that an accused has failed to "sufficiently identify himself" under rule 3.125(b)(1), so that more custodial arrests would occur.
NOTES
[1] Florida Rule of Traffic Court 6.165(a) provides that "[a]ll prosecutions for criminal traffic offenses by law enforcement officers shall be by uniform traffic citation as provided for in section 316.650, Florida Statutes, or other applicable statutes, or by affidavit, information, or indictment as provided for in the Florida Rules of Criminal Procedure."
[2] We note that giving a false name to a law enforcement officer after being arrested or lawfully detained is a criminal violation. See § 901.36(1), Fla. Stat. (2000).
[3] The opinion in Solino only indicates that a computer check revealed that "Solino's license had been suspended and he was in violation of probation for a prior conviction of burglary." Id. at 1250. We have checked our records on the case and determined that there was an outstanding arrest warrant for Solino.