FOURTH DIVISION   

March 23, 2000    

No. 1-97-3419

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JAMIE MURRAY,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

Honorable

Stuart E. Palmer,

Judge Presiding.

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Jamie Murray, was convicted of first degree murder and attempted first degree murder and sentenced to an extended term of 70 years for murder and a consecutive sentence of 30 years for attempted murder for a total of 100 years.

This court affirmed the conviction and sentence in a published decision.  
People v. Murray
, No. 1-97-3419 (September 16, 1999).

On February 28, 2000, the Illinois Supreme Court entered a supervisory order directing this court to vacate its judgment and reconsider the sentence in light of 
People v. Whitney
, No. 85986 (October 21, 1999).  Pursuant to that mandate, we hereby vacate the sentence in case No. 1-97-3419, and reconsider the matter pursuant to 
People v. Whitney
.

The two issues on appeal are (1) whether the trial court erred in denying the motion to quash the arrest and suppress defendant's statement, and (2) whether defendant's consecutive sentence was based upon an improper factor and whether the aggregate sentence of 100 years constituted an abuse of discretion.

The evidence adduced at trial was that on July 10, 1994, at approximately 4:45 p.m., the victims, Eric Smith and Tierre Randle, were walking down an alley in the vicinity of 1351 North Lockwood Avenue in Chicago, Illinois, when an individual, later identified as defendant, ran up from behind them, firing several shots, striking and killing Eric and injuring Tierre.  Defendant was arrested on a later date and identified in a lineup by two eye-

witnesses to the shootings, 
Tierre Randle and Ellis Walker, Eric's grandfather.

Dr. Edmund Donoghue, chief medical examiner for the Cook County medical examiner's office, testified that the cause and manner of Eric Smith's death were multiple gunshot wounds.  It was stipulated that Tierre Randle suffered a gunshot wound to the right foot with an open fracture to the right great toe proximal phalanx or big toe.  He was treated and released within 2½ hours of the shooting.

 Prior to trial, defendant filed a motion to quash the arrest and suppress his confession.  At the hearing, there was a stipulation that defendant was arrested pursuant to an outstanding arrest warrant.  The validity of that warrant has never been at issue.  What is at issue is the validity of the traffic stop that ultimately led to the discovery of the outstanding warrant.  The court did not permit any witnesses to testify, so an offer of proof was made by defense counsel:  On January 26, 1995, at approximately 6:30 p.m., defendant was a rear-seat passenger in a vehicle being operated in the vicinity of 175th and Pulaski in the Village of Country Club Hills, Cook County, Illinois. At that time, a village police officer effectuated a traffic stop and asked the driver, Cleveland Fields, for his driver's license.  While Mr. Fields was searching for his license, the police officer shined his flashlight into the interior of the car and saw what he believed to be the barrel of a revolver on the floor in front of the driver.  He ordered all of the occupants, including defendant, out of the car and handcuffed them.  Mr. Fields immediately told the officer that defendant did not know anything about the gun.  The officer asked defendant his name, who replied "DeAndre Williams."  A computer check on that name revealed that it was one of the aliases defendant used and that there was an outstanding arrest warrant for him out of Chicago.  Defendant was transported to the Country Club Hills police department, and the Chicago police were notified.  After the Chicago police officers arrived, defendant was "Mirandized," and interrogated.  Subsequently, he gave an inculpatory statement regarding the Smith-Randle shootings.

On September 20, 1995, the driver of this vehicle, Mr. Fields, appeared before Judge Reginald Baker in the Sixth District (Markham) and filed a motion to quash his arrest and suppress the evidence, to wit, the revolver.  After hearing evidence, Judge Baker granted the motion, stating: 

“According to the defendant he was driving down 175
th
 Street obeying all traffic laws.  The police pulled him over.  He couldn't produce a driver's license, and the police went in and started summarily searching his car, and produced a weapon.

According to the police officer, the police officer pulled out of the police station, observed the defendant commit traffic  violations, and then pulled him over for 

traffic violations in an unmarked unit, and then saw a gun extended from underneath the seat in plain view.

 

The matter does come down to credibility, because the testimony is diametrically opposed. The Court does find the officer credible.  On the other hand, the Court does find the defendant credible.  Also the Court would be engaging in a guessing game as to what occurred on January 26, 1995.

It is not customary for unmarked police cars to pull over traffic violators unless there is an egregious violation like a D.U.I. or something like that.  But minor traffic violations are generally not customary unless there is other criminal activity afoot.  The Court does not know what happened on that particular day.  I do not find the officer incredible, but I do not find the defendant incredible either, and the Court would be engaging in a guessing game.

In light of all of that, the Court will give the defendant the benefit of the doubt and motion to suppress will be respectfully sustained.”

The State never appealed Judge Baker's ruling.  When defendant Jamie Murray's motion to quash was heard before Judge Palmer, defense counsel argued that the confession was the "fruit of the illegal arrest" and should be suppressed.  Defense counsel stated there were no factual issues to be decided by the court, only legal issues. 

 The court stated:

   "I'm telling you right now, if there was an arrest warrant for the defendant at that time I would deny this motion ***.  My ruling is that it doesn't matter.  It doesn't matter why they stopped him or how they stopped him or whether they had probable cause to stop him or not.  It doesn't matter and, therefore, I'm not going to let you put an officer on.  You've agreed that there was an arrest warrant in effect that was issued by the Circuit Court of Cook County.  To me that's the end of the inquiry.

   *** Whether or not they would have, whether or not they stopped him for some other reason and then ultimately discovered that he was the guy that was wanted on the warrant is irrelevant.  There's a warrant out for him.  He's got no beef.

   *** I think it's irrelevant.  If there's an arrest warrant out for him, there's an arrest warrant out for him.  So you can't complain that the officers did not act appropriately by arresting him without a warrant when there was a warrant and I think it's not relevant whether they knew there was a warrant or not. ***Motion to quash arrest and suppress evidence is stricken."

Ordinarily, the decision of the trial court on a fourth amendment motion to quash and suppress will not be disturbed by a reviewing court unless that finding is determined to be clearly erroneous.  
People v. Foskey
, 136 Ill. 2d 66, 76, 554 N.E.2d 192 (1990).  Where neither the facts nor the credibility of the witnesses is contested, the issue of whether probable cause exists is a legal question which we may consider 
de novo
.  
In re D.G.
, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648 (1991).  

The State, in its brief, does not concede that the initial traffic stop by the Country Club Hills police was unlawful and takes issue with defendant's assertion in his brief that "it was undisputed and accepted as true by the trial court that the automobile in which [defendant] was a passenger was unlawfully seized."  However, during the  hearing on Murray's motion to quash, the State never argued that Judge Baker's ruling  was erroneous nor, as previously stated, did it take an appeal from that decision.  Its position was and still is that irrespective of the legality of that traffic stop, defendant's subsequent arrest by the Chicago police on an arrest warrant, the validity and sufficiency of which have never been challenged, and his subsequent confession to the Chicago police, were proper.  In light of this argument, we shall operate on Judge Baker's premise that the traffic stop was  based upon less than probable cause.  Our review, therefore, shall be 
de novo
.  See 
People v. Bascom
, 286 Ill. App. 3d 124, 126-27, 675 N.E.2d 1359 (1997).  

Although it is defendant's statement that was the subject of the suppression hearing and this appeal, the issue implicates the fourth,  not the fifth, amendment.  See 
People v. Tingle
, 279 Ill. App. 3d 706, 714, 665 N.E.2d 383 (1996).  

The fruit of the poisonous tree, or attenuation, doctrine was pronounced by the Supreme Court in 
Wong Sun v. United States
, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963):

"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  
Wong Sun
, 371 U.S. at 487-88, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.

In 
Brown v. Illinois
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975), the Supreme Court held that it was constitutional error to adopt a 
per se
 rule that 
Miranda
 warnings in and of themselves broke the causal chain between the primary illegality and the defendant's confession and held that the statement must be sufficiently "an act of free will unaffected by the initial illegality."  
Brown
, 422 U.S. at 603, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261.   While the 
Miranda
 warnings are an important factor in determining exploitation of illegality, they are not the only factor.  Other factors to consider are the temporal proximity of the arrest and the confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct.  
Brown
, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62.  

The law is clear that there is no "but for" rule under the fourth amendment.  Defendant, however, argues that but for the illegal traffic stop of the vehicle in which he was a passenger, he never would have been asked his name by the Country Club Hills police officer, who in turn discovered through the computer check that there was this outstanding arrest warrant from which the incriminating statement flowed.  The fact of an illegal arrest, standing alone, does not make a subsequent confession inadmissible.  See 
People v. Foskey
, 136 Ill. 2d 66, 554 N.E.2d 192 (1990).  

While our research has disclosed no Illinois cases which directly address this particular issue, we find 
United States v. Green
, 111 F.3d 515 (7th Cir. 1997), instructive.  The defendant in that case was illegally stopped by a police officer for a traffic violation.  There was no issue that the stop was for less than probable cause.  During the course of the stop, defendant's passenger was asked his name, and a computer check revealed an outstanding arrest warrant for him.  The officers arrested that individual, and defendant consented to a search of his vehicle.  Cocaine and a gun were discovered, and  defendant was arrested and charged with illegal possession of those items.  That defendant in that case argued, as does Mr. Murray, that "but for" the illegal traffic stop, the police would never have discovered the cocaine and gun.  The court disagreed and went through a very thorough analysis of 
Wong Sun
 and 
Brown
, concluding that the evidence was admissible.  Specifically, the court stated:

  "Where a lawful arrest pursuant to a warrant constitutes the 'intervening circumstance' *** it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated.   *** [W]here a lawful arrest due to an outstanding warrant is the intervening circumstance, consent (or any act for that matter) by the defendant is not required.  Any influence the unlawful stop would have on the defendant's conduct is irrelevant.  And in the case of an arrest made pursuant to a warrant there is also no chance that the 'police have exploited an illegal arrest by creating a situation in which [the] criminal response is predictable' ***."  
Green
, 111 F.3d at 522, quoting 
United States v. Garcia Jordan
, 860 F.2d 159, 161 (5th Cir. 1988).

Additionally, the court looked at the purpose and flagrancy of the official misconduct and concluded that while the police inappropriately stopped defendant's vehicle, there was no evidence of bad faith on the part of the police.  Furthermore, the police did not exploit the stop in order to search the automobile.  In other words, defendant's arrest was not an exploitation of the illegal stop. The reasoning was that once the driver was arrested pursuant to a valid arrest warrant, the officers were legally permitted to conduct a vehicle search incident to that arrest.   

Turning to the facts of this case and using the rationale and logic of 
Green
, we conclude that defendant's statement was not come at by exploitation of the illegal stop of Mr. Field's automobile.  Defendant was not interrogated until after he had been given his 
Miranda
 warnings.  
Brown
 instructs us that the giving of 
Miranda
 warnings is a factor to consider when we analyze the question of attenuation.  It would be illogical and nonsensical for us to hold that once the police illegally stop an automobile, they can never arrest an occupant who is found to be wanted on a warrant.  Even in situations where the exclusionary rule is plainly applicable, the Supreme Court has declined to adopt a "
per se
" or "but for" rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest.  See 
Green
, 111 F.3d at 521, citing 
United States v. Ceccolini
, 435 U.S. 268, 276, 55 L. Ed. 2d 268, 98 S. Ct. 1054 (1978).  Rather, the more apt question in such a case is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"  
Green
, 111 F.3d at 520, quoting 
Wong Sun
, 371 U.S. at 488, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.  "It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant -- in a sense requiring an official call of 'Olly, Olly, Oxen Free.'"  
Green
, 111 F.3d at 521. 

The arrest in this case was lawful because it was executed pursuant to a valid warrant.  Furthermore, defendant received his full panoply of 
Miranda
 warnings.  Given the facts and circumstances, it is clear that the arrest warrant, defendant's subsequent arrest pursuant thereto and the administering of the 
Miranda
 warnings all constituted intervening circumstances sufficient to dissipate any taint caused by an otherwise illegal stop.  We, therefore, find the court did not err in denying defendant's motion to quash and suppress the statement.

Defendant next contends that the court erred in imposing consecutive, rather than concurrent, sentences.  While defendant did file a motion to reconsider the sentence, he did not specify the arguments he makes on appeal, to wit, the imposition of a consecutive sentence based upon "severe bodily injury."
  The State argues that his failure to do so has waived this issue.

To be properly preserved on appeal, an issue must be raised both at trial and in a post-trial motion.  See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  However, the improper imposition of consecutive sentences might violate defendant's fundamental rights.  
People v. Durham
, 303 Ill. App. 3d 763 (1999).  A sentence which does not conform to a statutory requirement is void.  
People v.
 
Arna,
 168 Ill.2d 107, 112-13, 658 n.E.2d 445 (1995).  Therefore, we will review this issue to determine whether the imposition of consecutive sentences constitutes plain error.  
People v. Moncrief
, 276 Ill. App. 3d 533, 535 (1995).

There are three circumstances under which a court may impose consecutive sentences for offenses that were committed as part of a single course of conduct during which there is no substantial change in the nature of the criminal objective.  The one circumstance that is relevant to this appeal is where one of the offenses of which the defendant was convicted was a Class X or a Class 1 felony and the defendant inflicted severe bodily injury.

Section 5-8-4(a) of the Unified Code of Corrections reads as follows: 

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury ***."  730 ILCS 5/5-8-4(a) (West 1996).

Immediately prior to the imposition of the sentence, the court stated:

"[W]ith regard to the question of whether or not the defendant has to be sentenced consecutively with regard to the attempt first degree murder charge, I think it is clear that the statute requires that.  The defendant has been found guilty of first degree murder and attempt first degree murder of a separate victim who received bodily injury.  It is clear to me that Section 5-8-4 requires he be sentenced consecutively to that." 

 

Defendant argues that the court erred in sentencing him because it stated that the victim of the attempted murder, Tierre Randle, suffered only "bodily injury," contrary to the mandate of section 5-8-4, which requires "severe" bodily injury, and that Mr. Randle's fractured toe could in no way reasonably be construed as a "severe" injury.  Defendant points to the trial evidence that immediately after the shooting,  Mr. Randle continued to run even though he had been shot and that he was treated and released within only 2½ hours.  This evidence, defendant argues, militates against a finding of "severe bodily injury."

Recently the Illinois Supreme Court was called upon to interpret the meaning of the first exception under section 5-8-

4(a).  
People v. Whitney
, No. 85986 (October 21, 1999).  In that  case, defendant was found guilty of first degree murder of one victim and aggravated discharge of a firearm with respect to another victim, who was not injured.  The trial court sentenced that defendant to 50 years' imprisonment for the first degree murder conviction and 15 years' imprisonment for the aggravated discharge of a firearm conviction, with the sentences to run consecutively.  The issue in that case was whether the Class X or Class 1 felony must involve the infliction of severe bodily injury to the victim of that felony to trigger mandatory consecutive sentences under section 5-8-4(a).  
The court held that the first exception under section 5-8-4(a) requires consecutive sentencing where the defendant has been convicted of either a Class X or Class 1 felony and has inflicted severe bodily injury during the commission of that felony.  The court further stated:

“There is no dispute that defendant committed these crimes as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. First degree murder is not a Class X or Class 1 felony; rather, it is its own class of felony.  720 ILCS 5/24-1.2(a), (2)(b) (West 1994). Defendant's conduct, however, in committing the offense of aggravated discharge of a firearm did not result in severe bodily injury to the victim of that felony.  We therefore hold that the requirements for the first exception under section 5-8-4(a) have not been satisfied.  Consequently, consecutive sentences are not 

warranted in this case.  Rather defendant was subject only to concurrent sentences for first degree murder and aggravated discharge of a firearm.”

In the instant case, the injury sustained to the victim of the attempted murder offense was a “fractured big toe.”   The victim was released after 2½ hours.  Under these circumstances, we cannot  agree with the State that a fractured toe constitutes "severe bodily injury" as contemplated by the statute. 

 The triggering felony for purposes of consecutive sentencing is the attempted murder of Tierre Randle.  In light of 
Whitney
, the statute requires that the injury be part of that triggering felony as long as a Class X or Class 1 felony is committed and severe bodily injury occurs during the single course of conduct.  
There is no dispute that defendant, Murray, committed these crimes as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.  First degree murder is its own class felony and not a Class X or Class 1 felony.  Attempted first degree murder is a Class X felony, yet defendant's conduct in committing the offense of attempted first degree murder of Mr. Randle did not result in "severe bodily injury."  Therefore, consecutive sentences are not warranted, and defendant was subject only to concurrent sentences for first degree murder and attempted first degree murder.

For the foregoing reasons, we affirm defendant's convictions for first degree murder and attempted murder.  However, based upon the holding in 
People v. Whitney
, we vacate defendant's sentences  and remand the matter to the trial court with directions to resentence  defendant in accordance with this opinion.

Affirmed in part; vacated in part and remanded.

HOFFMAN, P.J., and HALL, J., concur.