**Edward Lamont HARDY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2003–CA–000584–MR.**

Court of Appeals of Kentucky.

May 21, 2004.

Discretionary Review Denied
Dec. 8, 2004.

John Rampulla, Lexington, KY, for appellant.

Albert B. Chandler III, Attorney General, Tami Allen Stetler, Assistant Attorney General, Frankfort, KY, for appellee.

Before JOHNSON, TAYLOR and VANMETER, Judges.

## OPINION

JOHNSON, Judge.

Edward Lamont Hardy has appealed from a final judgment and sentence of the Fayette Circuit Court entered on February 24, 2003, which, following Hardy's conditional plea of guilty to trafficking in a controlled substance in the first degree,[1] sentenced him to five years' imprisonment in accordance with the Commonwealth's recommendation. Having concluded that the trial court did not err by denying Hardy's motion to suppress evidence, we affirm.

On November 4, 2002, a Fayette County grand jury indicted Hardy on one count of trafficking in a controlled substance in the first degree. Three days later, Hardy entered a plea of not guilty to the charge. On November 25, 2002, Hardy filed a written motion to suppress, arguing that the cocaine found on his person was seized in an unconstitutional manner. A suppression hearing was held on that same day. Our review of the record of that hearing reveals the following facts, which are not in dispute.

At approximately 1:00 a.m. on October 5, 2002, Hardy was a passenger in a vehicle being driven by his girlfriend,[2] when Officer Johnny Williams and Officer Cook[3] of the Lexington Police Department initiated a traffic stop on the automobile after noticing that the vehicle's taillights were not functioning. Officer Williams testified that when he conducted traffic stops, it was his policy to ask for identification from the driver and any and all passengers. Officer Williams stated that because it was around 1:00 a.m. on a weekend morning, dispatch was at that time receiving a heavy volume of calls from other officers. As a result, it took approximately 20–30 minutes to run the background check on Hardy's driver's license.[4]

The background check of Hardy's driver's license ultimately revealed an outstanding warrant for his arrest.[5] Hardy was then handcuffed and placed into custody. A search of Hardy's person incident to his arrest revealed approximately 35.4 grams of crack cocaine, which had been separated into individual packages.

After hearing the evidence presented at the suppression hearing and after giving

---

1. Kentucky Revised Statutes (KRS) 218A.1412.

2. The name of Hardy's girlfriend is not mentioned in the record. According to Officer Williams's testimony, Hardy's girlfriend initially denied having identification on her person and gave Officer Cook a false name. However, after Hardy's girlfriend surrendered her driver's license, the background check revealed five outstanding warrants for her arrest. She was then placed under arrest. The disposition of her case is not clear from the record.

3. Officer Cook's first name is not mentioned in the record.

4. Officer Williams testified that it took approximately 10–20 minutes, or "possibly longer" to complete the background check on Hardy's driver's license. Hardy testified that approximately 20–30 minutes elapsed between the time he was asked to surrender his driver's license and the time he was first informed there was an outstanding warrant for his arrest.

5. Hardy's arrest warrant was a bench warrant for failure to appear.

both sides time to submit written memoranda regarding the legality of the search and seizure at issue, the trial court denied Hardy's motion to suppress at a status conference held on December 6, 2002.

Following the denial of his motion to suppress, Hardy elected to accept the Commonwealth's plea offer, and entered a conditional plea of guilty to trafficking in a controlled substance in the first degree, while preserving his right to appeal the denial of his motion to suppress. In exchange for Hardy's conditional guilty plea, the Commonwealth agreed to recommend that Hardy be sentenced to five years' imprisonment. On February 24, 2003, the trial court followed the Commonwealth's recommendation and sentenced Hardy to five years' imprisonment. This appeal followed.

■■■ Hardy raises two claims of error in support of his argument that the trial court erred by denying his motion to suppress. First, Hardy claims that he was unlawfully "seized" when the officers refused to allow him to leave the scene while waiting for dispatch to complete a background check of his driver's license. According to Hardy, since the officers did not have reasonable, articulable suspicion that he was engaged in criminal activity, the officers unlawfully "seized" him by denying his requests to leave the scene.[6] Hence, Hardy claims that this seizure "tainted" his arrest, *i.e.*, if not for the alleged unlawful detainment, the officers would not have learned that Hardy had an outstanding warrant for his arrest, and if not for his arrest pursuant to that warrant, the crack cocaine on his person would not have been discovered. Thus, Hardy argues that the drug evidence should have been suppressed. We find this argument to be unpersuasive.

The Supreme Court of the United States has rejected a "but for" test when determining whether an "intervening circumstance" is sufficient to dissipate the taint caused by prior unlawful conduct on the part of the police.[7] In *Baltimore v. Commonwealth*,[8] this Court noted that "a valid arrest may constitute an intervening event that cures the taint of an illegal detention sufficient to rebut the application of the exclusionary rule to evidence recovered in a search incident to an arrest." In *Green*, the United States Court of Appeals for the Seventh Circuit held that although the initial stop of the vehicle in question was unlawful, the officers' subsequent determination that an occupant of the vehicle had an outstanding arrest warrant constituted an "intervening circumstance" which dissipated the taint caused by the unlawful stop:

The intervening circumstances of this case, because they are not outweighed by flagrant official misconduct, dissipate any taint caused by the illegal stop of the Greens. Specifically, after stopping the Green brothers, the officers discovered there was a warrant outstanding for Avery. Accordingly, the officers arrested Avery. With the right to arrest

---

**6.** *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(holding that a police officer is justified in making a brief investigatory stop if he has reasonable, articulable suspicion that criminal activity is afoot).

**7.** *See United States v. Ceccolini*, 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978)(stating that "[e]ven in situations where the exclusionary rule is plainly applicable, we have declined to adopt a '*per se* or "but for"

rule' that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest").

**8.** Ky.App., 119 S.W.3d 532, 541 n. 37 (2003)(citing *United States v. Green*, 111 F.3d 515 (7th Cir.1997)).

Avery came the right to conduct a search incident to an arrest. This included the right to search the automobile's passenger's compartment to ensure there were no weapons and to protect the officers [citations omitted].

It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of Avery constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.[9]

Thus, assuming that Hardy had been unlawfully detained while the officers conducted a background check of his driver's license, we hold that the discovery of the outstanding warrant for his arrest was sufficient to dissipate any taint caused by the alleged unlawful detainment. First, it is undisputed that the officers were justified in initially stopping the vehicle. In addition, Officer Williams testified that the delay in completing the background check was due to a heavy volume of calls that dispatch was receiving from other police officers. Therefore, considering the fact that Hardy was arrested pursuant to a valid outstanding warrant,[10] this "intervening circumstance" outweighed any possible

misconduct on the part of the officers in detaining Hardy while waiting for the results of his background check. Therefore, since Hardy's arrest was lawful, the search of his person incident to that arrest was also lawful. Accordingly, the trial court did not err by denying Hardy's motion to suppress.

■ Next, Hardy, who is black, argues that the crack cocaine should have been suppressed on grounds that he was a victim of racial profiling. Hardy claims that the officers violated the Lexington Police Department's policy against racial profiling,[11] and that the evidence seized from his person should have been suppressed. We disagree.

■ We first note that Hardy has failed to point to any evidence whatsoever in support of his bald assertion that he was a victim of racial profiling. Simply stated, there is nothing in the record to support Hardy's allegation that he was profiled because of his race.[12] Moreover, even if it could be said that Hardy was a victim of racial profiling, Hardy has failed to cite to any authority stating that a violation of a racial profiling policy requires the suppression of incriminating evidence. "[T]he so-called 'exclusionary rule' applies only to evidence obtained in violation of a constitutional right,"[13] not to violations of internal police procedures.[14] Accordingly, the trial

9. *Green*, 111 F.3d at 521. In *Green,* the Court determined that the initial *Terry* stop of the vehicle in question was not justified.

10. The validity of Hardy's arrest warrant has not been challenged on appeal.

11. *See* Lexington Fayette Urban County Division of Police, General Order 00–2A, Profiling Policy. *See also* KRS 15A.195 (prohibiting racial profiling and urging all law enforcement agencies to adopt formal, written policies prohibiting the practice of racial profiling).

12. On the contrary, Officer Williams, who is also black, testified that he followed the same police procedures with respect to traffic stops regardless of the individual's race.

13. *Brock v. Commonwealth,* Ky., 947 S.W.2d 24, 29 (1997).

14. According to General Order 00–2A, *supra,* police officers who violate the Lexington Police Department's profiling policy are subject to internal disciplinary proceedings.

court did not err by denying Hardy's motion to suppress.

Based on the foregoing, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.