2006 OK CR 4

**Anthony Wayne JACOBS, Appellant**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–2005–104.**

Court of Criminal Appeals of Oklahoma.

Feb. 1, 2006.

Royce Hobbs, Stillwater, OK, attorney for defendant at trial.

Katherine Thomas, Assistant District Attorneys, Stillwater, OK, attorney for state at trial.

Nancy J. Walker–Johnson, Monument, CO, attorney for petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, OK, attorneys for respondent on appeal.

### SUMMARY OPINION

CHAPEL, Presiding Judge.

¶ 1 Anthony Wayne Jacobs was tried in a bench trial and convicted of Count I, Unlawful Possession of Controlled Drug with Intent to Distribute in violation of 63 O.S.Supp.2004, § 2–401(B)(2); Count II, Unlawful Possession of Drug Paraphernalia in violation of 63 O.S.2001, § 2–405; and Count III, Obstructing an Officer in violation of 21 O.S.2001, § 540, in the District Court of Payne County, Case No. CF–2004–386. The Honorable Donald L. Worthington sentenced Jacobs to five (5) years imprisonment (Count I), and one (1) year imprisonment in the County Jail on each of Counts II and III, to run concurrently. Jacobs appeals from these convictions and sentences.

¶ 2 Jacobs raises three propositions of error in support of his appeal:

I. The trial court erred in failing to suppress the evidence obtained as a result of the illegal seizure of Jacobs. Officer Petrashek [sic] stopped the vehicle in which Jacobs was a passenger on the pretext the that driver had committed a traffic offense. Because the facts which Petrashek [sic] articulated did not constitute a traffic violation, the stop of the vehicle was illegal and violated Jacobs's state and federal constitutional right to be free from illegal search and seizure. Accordingly, his conviction, based upon the evidence seized and statements

made, must be reversed and dismissed;

II. The State failed to establish beyond a reasonable doubt that Jacobs knowingly possessed drug paraphernalia, when the drug paraphernalia charged was not in Jacobs's possession, but discovered in a motel room over which Jacobs had no control; and

III. The Judgment and Sentence must be corrected to properly reflect the sentence pronounced.

¶ 3 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and briefs, we find that neither reversal nor modification are required by the law and evidence. However, we find in Proposition III that the case must be remanded for an Order Nunc Pro Tunc reflecting that Jacobs's sentences in Counts I, II and III should run concurrently. We find in Proposition II that sufficient evidence of dominion and control necessary for constructive possession was presented, so that any rational trier of fact could have found beyond a reasonable doubt that Jacobs had dominion and control over the paraphernalia in the motel room.[1]

¶ 4 Proposition I presents an issue of first impression. Officers had Room 25 of the Circle D Motel under surveillance. They watched as several people left that room, got in a car, and pulled out of the parking lot. Officer Wall [2] stopped the car within a block. All the passengers were asked for identification. Jacobs originally gave a false name. Officers quickly discovered Jacobs's true name, and that he had an outstanding arrest warrant. He was arrested on the warrant and crack cocaine was found in his pockets as he was booked into the Payne County jail. Jacobs claims that the stop and initial seizure were illegal, so the evidence obtained by the subsequent booking search should have been suppressed.

¶ 5 When Officer Wall made this vehicle stop, he knew the car was filled with people

---

1. *White v. State*, 1995 OK CR 15, 900 P.2d 982, 986–87; *Doyle v. State*, 1988 OK CR 147, 759 P.2d 223, 225; *Hammonds v. State*, 1987 OK CR 132, 739 P.2d 525, 527; *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202, 203–04.

2. Jacobs consistently refers to Officer Petrashek in this proposition. However, Officer Petrashek kept the motel room under surveillance. Officer Wall made the traffic stop.

who had just left a motel room under surveillance, and that officers were in the process of getting a warrant to search the room. He stopped the car within a block after it left the motel. Officer Wall said he believed it was a violation of a Stillwater municipal ordinance for backseat passengers to sit on other passengers' laps, and might also have violated a state statute because the lap passengers might have, at some point, obstructed the driver's rear vision. He consequently stopped the car because he thought it was overcrowded. Neither the municipal ordinance nor the state statute justified this stop. The ordinance prohibits riding on a portion of a vehicle "not designed or intended for the use of passengers."[3] The state statute prohibits more than three persons from riding in the front seat, passenger obstruction of the driver's view to the front or sides of a vehicle, and interference with the driver's ability to control the driving mechanism.[4] Jacobs claims, as he did below, that this stop was illegal, and the State does not seriously suggest otherwise. The magistrate concluded that the stop was illegal, found that Jacobs had standing to contest it, and ruled that the arrest warrant provided a separate intervening circumstance which justified the search.

■ ¶ 6 Jacobs claims that his warrantless seizure[5] requires suppression of the evidence found during the subsequent booking search. The magistrate correctly concluded that Jacobs could contest an illegal stop which resulted in seizure of his person.[6] Generally, evidence seized in violation of the Fourth Amendment must be excluded.[7] However, the United States Supreme Court explicitly rejected a "but for" test which would require automatic exclusion of evidence that would not have come to light but for the illegal actions of police.[8] Evidence may be admissible where it was discovered through an independent source, or where intervening circumstances break the connection between the illegal government conduct and discovery of the evidence.[9] In making such a determination, a reviewing court must consider (a) the proximity in time between the illegal seizure and the discovery of the evidence; (b) any intervening circumstances; and (c) the purpose and flagrancy of official misconduct.[10] The last factor may be shown by evidence that police actions were purposefully investigatory in nature; that an arrest was obviously illegal; and that an arresting officer was aware the arrest was illegal.[11]

¶ 7 The real question here is whether officers could arrest Jacobs on a valid outstanding arrest warrant after the illegal stop. While this is an issue of first impression, this Court has considered similar issues. We have held that the illegality of an original stop does not preclude an otherwise valid second arrest.[12] In *McGaughey v. State*,[13] we held that illegally impounding the defendant's car constituted an illegal seizure. However, the car was later searched pursuant to a search warrant obtained after the

---

**3.** Stillwater City Ordinance 29–273. The ordinance excepts riding within truck bodies or on a tailgate while delivering newspapers. A similar state statute prohibits passengers from riding outside the passengers compartment of vehicles, excepting riding for parades, etc., or in a pickup truck bed. 47 O.S.2001, § 11–1114.

**4.** 47 O.S.2001, § 11–1104.

**5.** *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979) (automobile stop and detention constitutes seizure).

**6.** *See, e.g., United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir.2001); *United States v. Eylicio–Montoya*, 70 F.3d 1158, 1164 (10th Cir. 1995); *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir.1989).

**7.** *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

**8.** *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *Wong Sun*, 371 U.S. at 487, 83 S.Ct. at 417.

**9.** *Wong Sun*, 371 U.S. at 487, 83 S.Ct. at 417.

**10.** *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (specifically discussing admission of confessions after an illegal arrest); *McGaughey v. State*, 2001 OK CR 33, 37 P.3d 130, 141, *citing United States v. McSwain*, 29 F.3d 558 (10th Cir.1994).

**11.** *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262; *McGaughey*, 37 P.3d at 142.

**12.** *Turner v. State*, 1975 OK CR 224, 542 P.2d 955, 961.

**13.** 2001 OK CR 33, 37 P.3d 130.

illegal impoundment and based on evidence gathered independently from the illegal seizure. We held that, under those circumstances, the search of the car was not tainted by the illegal seizure, and the evidence was admissible.[14]

¶ 8 Other jurisdictions have held that, where police have a good faith basis for an illegal stop, and discover an outstanding arrest warrant for a person during the course of that stop and seizure, police may arrest the person on the warrant and any material found during the search subsequent to that arrest will be admissible.[15] The most recent of these cases is *McBath v. State*,[16] a remarkably similar case from Alaska. There, an initial valid traffic stop evolved into an investigative stop when officers discovered the driver was drunk. Officers told McBath he was free to go, but asked for his name when the driver asked him to remove property from the truck. Officers became suspicious when McBath gave an apparently false name, and seized and handcuffed him until he gave his real name. This information led to the discovery of outstanding warrants. Police arrested McBath on the warrants, and found that he was carrying methamphetamine in a search incident to the arrest. The Alaska Court of Appeals held that, assuming the original seizure was illegal, "the pre-existing

arrest warrants sufficiently attenuated the connection between the initial investigative stop and the later discovery of the methamphetamine."[17] *McBath* relies on the Seventh Circuit's opinion in *United States v. Green*.[18] The *Green* Court observed that any other result would be contrary to the purpose of the exclusionary rule, stating: "It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of 'Olly, Olly, Oxen Free.' Because the arrest is lawful, a search incident to the arrest is also lawful."[19] Such a result would be startling indeed. The Texas Court of Appeals cogently described some problems which may easily arise from that result:

> For example, if the police illegally detain a suspect and discover arrest warrants, may they release the suspect and re-arrest him and then conduct a legal search? If not, is he forever immune from the consequences of a search incident to a subsequent arrest under those same warrants? If so, when can they re-arrest him? After he steps outside the door of the police station? A block away? The same day?[20]

¶ 9 Jacobs argues that police would never have learned his name, and discovered the

---

**14.** 37 P.3d at 144.

**15.** *United States v. Green*, 111 F.3d 515 (7th Cir.1997); *McBath v. State*, 108 P.3d 241 (Alaska Ct.App.2005); *State v. Hill*, 725 So.2d 1282 (La. 1998); *Hardy v. Commonwealth*, 149 S.W.3d 433, 435 (Ky.App.2004); *Quinn v. State*, 792 N.E.2d 597, 601–02 (Ind.Ct.App.2003); *Fletcher v. State*, 90 S.W.3d 419, 420–21 (Tex.App.2002); *State v. Jones*, 270 Kan. 526, 17 P.3d 359, 360–61 (2001); *People v. Murray*, 312 Ill.App.3d 685, 245 Ill.Dec. 430, 728 N.E.2d 512, 516–17 (2000) (any conclusion police cannot arrest a person on a valid warrant after an illegal stop "illogical and nonsensical"); *Reed v. State*, 809 S.W.2d 940, 947 (Tex.App.1991); *Ruffin v. State*, 201 Ga.App. 792, 412 S.E.2d 850, 852–53 (1991); *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131, 137 (1989); *State v. Lamaster*, 652 S.W.2d 885, 886–87 (Mo.Ct.App.1983); *People v. Hillyard*, 197 Colo. 83, 589 P.2d 939, 941 (1979); *State v. Foust*, 262 So.2d 686, 687–88 (Fla.Dist.Ct.App. 1972); *State v. Rothenberger*, 73 Wash.2d 596, 440 P.2d 184, 186 (1968) (referring to suggestion that police could not make an arrest on a valid outstanding warrant after an illegal stop as "indescribably silly"). *See also United States v.*

*Hudson*, 405 F.3d 425, 440 (6th Cir.2005) (citing *Green* to uphold arrest on valid warrant after illegal stop, while suppressing evidence from search conducted after illegal stop but before identification of defendant and confirmation of warrant). *But see Sanchez v. State*, 803 N.E.2d 215, 222–23 (Ind.Ct.App.2004) (disagreeing with *Quinn*; the Indiana Supreme Court has not resolved the conflict); *Frierson v. State*, 851 So.2d 293, 300 (Fla.Dist.Ct.App.2003) (disagreeing with *Foust*; the Florida Supreme Court granted review in *State v. Frierson*, 870 So.2d 823 (Fla., February 26, 2004), but has not yet decided the case).

**16.** 108 P.3d 241 (Alaska Ct.App.2005).

**17.** 108 P.3d at 244.

**18.** 111 F.3d 515 (7th Cir.1997).

**19.** *Id.* at 521.

**20.** *Fletcher*, 90 S.W.3d at 421, *quoting Reed*, 809 S.W.2d at 948 n. 3.

outstanding arrest warrants, if not for the illegal stop. The Supreme Court of Louisiana considered this same argument in *State v. Hill*.[21] *Hill* recognized that the defendant's true name was the only link between the initial invalid stop and the discovery of a crack pipe in Hill's pocket. However, *Hill* concluded that, should the Court rely on this single causal link to suppress the evidence, it would violate the United States Supreme Court's explicit rejection of a "but for" test.[22] We conclude, as did the Louisiana Supreme Court, that discovery of outstanding warrants is a significant intervening event which gives police probable cause to arrest a defendant independent from an illegal stop and seizure.

■ ¶ 10 After reviewing the cases cited above, the Alaska Supreme Court distilled the following rule:

> If, during a non-flagrant but illegal stop, the police learn the defendant's name, and the disclosure of that name leads to the discovery of an outstanding warrant for the defendant's arrest, and the execution of that warrant leads to the discovery of evidence, the existence of the arrest warrant will be deemed an independent intervening circumstance that dissipates the taint of the initial illegal stop vis-à-vis the evidence discovered as a consequence of a search incident to the execution of the arrest warrant.[23]

¶ 11 We hereby adopt this rule. Our decision balances a defendant's right against illegal search and seizure with the community's expectation that a valid arrest warrant may be served upon a subject, even if police learned about the arrest warrant after an illegal stop. This rule discourages police from flagrantly illegal, investigatory seizures. At the same time, it does not attempt to punish police for mistakes or errors made in good faith. Such punishment would be unlikely to deter police misconduct.

■ ¶ 12 With this conclusion in mind, we review the illegal stop and subsequent arrest

according to the *Brown* factors above. The record indicates that ten to twenty minutes may have elapsed from the illegal stop to the time Jacobs admitted his correct name, and possibly ten minutes elapsed between the time he gave an incorrect name and the time he admitted his identity, and was arrested. The record does not show precisely how much time passed between Jacobs's arrest and his booking search. While this brief length of time might suggest that the illegal stop and subsequent search are closely connected, it is not dispositive. We have concluded that Jacobs's arrest on a valid outstanding warrant is an independent intervening circumstance which attenuates the taint of the illegal stop. Officer Wall was in fact mistaken in his belief that the arrangement of passengers in the car violated municipal or state law. However, Officer Wall testified several times that he had stopped similarly loaded cars in the past, and that he believed he was correct in stopping the car. While Wall had information that the people in the car might have been involved in drug activity, he testified that he pulled the car over when he did, rather than continue to follow it, because he believed he observed a traffic violation. The record does not indicate that Wall stopped the car as part of a fishing expedition or other type of investigation, or was otherwise flagrant or improper.[24]

¶ 13 Officer Wall had no flagrant or improper purpose in making what was later determined to be an invalid traffic stop. Discovery of Jacobs's outstanding arrest warrant was an independent intervening circumstance which attenuated the taint of the initial illegal stop and seizure. The trial court did not err in overruling Jacobs's motion to suppress.

### Decision

¶ 14 The Judgments and Sentences of the District Court are **AFFIRMED**. The case is **REMANDED** to the District Court for an Order Nunc Pro Tunc reflecting that Ja-

---

**21.** 725 So.2d 1282 (La.1998).

**22.** *Hill,* 725 So.2d at 1287. *See McBath,* 108 P.3d at 246; *Murray,* 728 N.E.2d at 516–17.

**23.** *McBath,* 108 P.3d at 248.

**24.** *McGaughey,* 37 P.3d at 142.

cobs's sentences in Counts I, II and III should run concurrently. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, A. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: concur in results.

LUMPKIN, Vice–Presiding Judge: concur in result.

¶1 While I might, in the proper case, be inclined to agree with some of the legal principles set forth in today's lengthy Summary Opinion, i.e., the so-called "issue of first impression" the Court purports to adopt, that discussion is irrelevant in resolving the question at issue in this case. Thus, the Court's adopted rule is purely dicta and should be considered as such.

¶2 The record shows that Officer Wall had, at the time he stopped the vehicle in question, a reasonable suspicion of illegal activity, if not probable cause. The police had been advised of illegal drug activity taking place at the motel in room 25. Upon arriving, Officer Petrashek observed Glen Martin approaching room 25. Upon seeing Petrashek, Martin abruptly turned around and left. When questioned, Martin revealed he went to the motel to buy marijuana from Appellant and had bought marijuana from him on at least four prior occasions. Martin said Appellant had offered to sell marijuana to him that day and had instructed Martin to come to room 25. Based upon this information, a search warrant was issued and in the process of being served. When Appellant and five others exited room 25 and left in a Pontiac, Petrashek related this information to Officer Wall, who then followed the car, eventually pulling it over for what he thought was a municipal traffic violation.

¶3 Even when there is not yet probable cause to make an arrest, when police officers "[h]ave a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then [an investigative] stop may be made to inves-

tigate that suspicion." *Coulter v. State,* 1989 OK CR 42, ¶5, 777 P.2d 1373, 1374. This was the case here. We need not delve into the municipal ordinance issue, as Officer Wall had every right to stop the vehicle and question those who had left the motel room that was under surveillance.